# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ALMA EILEEN WEBB, AS THE SURVIVING DAUGHTER AND ADMINSTRATOR OF THE ESTATE OF DECEDENT MARGARET MAY MARIE FUGATE; AND ESTATE OF DECEDENT MARGARET MAY MARIE FUGATE, <br><br> Plaintiffs, <br><br> v. <br><br> MEDICALODGES, INC.; MEDICALODGES NEVADA, LLC, <br><br> Defendants. | Case No. 4:23-CV-00693-RK |

## ORDER

Before the Court is Defendants Medicalodges, Inc. and Medicoldges Nevada, LLC's motion to dismiss. (Doc. 9.) The motion is fully briefed. (Docs. 10, 14, 15.) For the reasons below, Defendants' motion to dismiss is **DENIED**.

## I. Background[1]

Plaintiff Alma Webb filed an amended complaint alleging that Margaret Fugate ("Decedent") died on June 26, 2022, from urosepsis that developed while she was a resident at Medicalodges Nevada, LLC ("Facility"), a skilled nursing facility, between June 21, 2022, and June 25, 2022. (Doc. 7, ¶ 1.) Plaintiff is one of Ms. Fugate's surviving children and the administrator of her estate. (*Id.* at ¶¶ 3-4.) Defendant Medicalodges, Inc. ("Corporation"), is the sole member of Medicalodges Nevada, LLC, and owns, operates, manages, maintains, and controls the Facility. (*Id.* at ¶¶ 9, 15.) The Corporation owns and operates 23 skilled nursing facilities in three states. (*Id.* at ¶ 10.) Plaintiff brings claims of wrongful death (Count 1) against both defendants, negligence for pain and suffering not resulting in death, in the alternative to her

---

[1] In considering Defendants' motion to dismiss, the Court takes the facts pleaded in Plaintiff's amended complaint as true and construes them in the light most favorable to Plaintiff as the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

wrongful death claim (Count 2) against both defendants, and alter ego as to the Corporation (Count 3).

When Decedent was admitted to the Facility for skilled nursing care, she was or should have been identified as being at risk for developing a urinary tract infection ("UTI"). (*Id.* at ¶¶ 29-30.) Decedent was in a defenseless and dependent condition and depended on the Facility to provide for her safety, protection, care, and treatment. (*Id.* at ¶¶ 73-74.) The Facility staff should have initiated a care plan to address Decedent's risk for UTIs but did not implement the appropriate interventions. (*Id.* at ¶ 31.) None of the Facility staff properly assessed Decedent's risk of developing a UTI, implemented or provided the appropriate interventions to prevent Decedent from developing a UTI (or allowing Decedent's UTI to get worse). (*Id.* at ¶ 32) No one monitored or evaluated Decedent's care plan to see if the interventions prescribed were working, or monitored Decedent's condition, including her UTI. (*Id.* at ¶ 32.)

The Facility had no autonomy to decide their own financial course and no authority as to how much staff they could provide or what resources were available to the staff. (*Id.* at ¶ 38.) No one at the Facility is involved in decision-making about the financial operations or what its resources were and where they would be spent. (*Id.* at ¶ 39.) Transactions by the Corporation left the Facility with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their Facility during Decedent's time there. (*Id.* at ¶ 40.)

The Corporation directed, operated, and managed the day-to-day functions of the Facility by developing and implementing policies, practices, and procedures affecting all facets of the Facility (including resident care, physical resources, financial resources) and prohibiting decision making at the Facility level. (*Id.* at ¶¶ 41-42.) This affects resident care by determining the nourishment available for residents, what safety measures may be used depending upon cost, the integrity of the Facility's building, and how much staff is available for resident care, as well as the training and supervision of the staff. (*Id.* at ¶ 43.)

The Corporation was aware that the delivery of essential care services in the Facility hinged on three fiscal and operation policies that it chose to establish and implement, namely, (1) the determination of the numbers and expenditures on staffing levels, (2) the determination of the census levels within the nursing home, and (3) payor mix. (*Id.* at ¶ 51.) The Corporation made operational decisions that manipulated and directly impacted the Facility's revenues and expenditures, including determining the number of staff allowed to work in the Facility, the

expenditures for staffing at the Facility, the revenue targets for the Facility, the payor mix and census targets for the Facility, and patient recruitment programs and discharge practices at the Facility. (*Id.* at ¶ 52.) All the Facility's cash management functions, revenues and expenditure decisions were tightly managed, directed, and supervised by the Corporation. (*Id.* at ¶ 53.) The Corporation's choices directly fixed the circumstances in the Facility and the level of care that could be, and was, provided at the Facility. (*Id.* at ¶ 54.) The Corporation formulated, established, and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix at the Facility. (*Id.* at ¶ 55.)

The Corporation designed and mandated census edicts,[2] marketing and admission practices, and resident discharge policies and carefully supervised and enforced their implementation and application at the Facility. (*Id.* at ¶ 56.) The Facility followed the mandates and functioned in accordance with them by filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporation deemed appropriate. (*Id.* at ¶ 57.) The Corporation's manipulation as to staffing and census was motivated by the Corporation's and the Facility's financial needs, as opposed to the acuity levels and needs of the residents. (*Id.* at ¶ 58.)

Because of the staffing levels and the staff's level of qualification and training, Decedent did not receive the basic care required to prevent injury and death. (*Id.* at ¶ 66.) During Decedent's residency at the Facility, the Corporation did not provide and/or hire, supervise and/or retain staff capable of providing Decedent with a clean, safe, and protective environment, which caused Decedent to suffer severe personal injuries, conscious pain and suffering, and deterioration of her physical condition. (*Id.* at ¶ 68.)

The Corporation exercised complete control and domination over the Facility's finances and business practices. (*Id.* at ¶ 99.) This caused the Facility to operate at a loss and with its liabilities in excess of its assets in the years 2021, 2022, and 2023. (*Id.* at ¶ 100-102.) The Corporation owns all or most of the capital stock of the Facility and subscribes to all the capital stock of the Facility. (*Id.* at ¶ 102.) The Corporation and the Facility have common directors or officers. (*Id.*) The Corporation finances the Facility and incorporated the Facility. (*Id.*) The

---

[2] Plaintiff does not define or explain "census edicts" in the record nor does the Court by its own research find the term defined in caselaw. The Court assumes it means something along the lines of directives regarding population levels in the Facility.

3

Corporation pays the salaries and other expenses or losses of the Facility. (*Id.*) The Corporation uses the Facility's property as its own. (*Id.*) The Facility's directors or executives do not act independently in the interest of the Facility but take their orders from the Corporation in the Corporation's interest. (*Id.*) The Corporation's complete control and domination of the Facility depleted all the Facility's assets, thereby making it unable to pay a judgment resulting from its care of residents including Decedent. (*Id.* at ¶ 103.)

## II. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted." A complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Generally, the Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint states a claim, the Court looks at two factors. First, the Court must identify the allegations that are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678. In other words, to state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. This step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Court must review the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether Plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 681-82.

## III. Discussion

### A. Existence of a Duty

Defendants first argue that Plaintiff fails to state a claim for wrongful death and for negligence because Plaintiff cites no duty established in Missouri law for the defendant corporate

4

skilled nursing facility entities in this situation. Plaintiff contends that the Facility owed a legal duty of care to all residents at its skilled nursing facility including Decedent because it is a skilled nursing home. Plaintiff asserts that the Corporation owed a legal duty of care to Decedent because the actions at issue in this lawsuit created a foreseeable likelihood that they would cause harm or injury – that their acts constituted the first domino to fall resulting in the acts of negligence that led to the ultimate harm of resident injury at the Facility. Plaintiff further argues that corporate negligence is a recognized cause of action under Missouri law.

In Missouri, in an action for negligence, the plaintiff must establish that "(1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *Martin v. City of Wash.*, 848 S.W.2d 487, 493 (Mo. banc 1993). As in other common-law actions, the threshold matter in a negligence action is the existence of a duty. *Carman v. Wieland*, 406 S.W.3d 70, 76 (Mo. Ct. App. 2013). "The existence of a duty is unique among the elements of negligence because it is a question of law for the court to decide and hence this question is central to determining whether a party has a right to judgment as a matter of law." *Id.* (citation omitted); *see also Morrison v. Kubota Tractor Corp.*, 891 S.W.2d 422, 425 (Mo. Ct. App. 1994) ("In a negligence action, whether a duty exists is entirely a question of law for the court.")

As to Plaintiff's wrongful death claim:

> [T]he wrongful death statute does not provide, in and of itself, an independent basis for liability; rather, the wrongful death statute proves a means through which a defined class of persons can recover damages pursuant to a cause of action [such as negligence] that, but for the injured person's death, would have provided the injured person a basis for recovery.

*Haynes v. Williams*, No. 1:21-CV-00160-ACL, 2023 WL 3736492, at *2 (E.D. Mo. May 31, 2023) (applying Missouri law). Plaintiff's allegations in Count 1 are for wrongful death premised on negligence and are largely mirrored in his allegations for negligence in Count 2. Similar to negligence, to prove liability under Missouri's wrongful death statute, a plaintiff is required to establish that the defendant owed a duty to the decedent, that the defendant breached that duty, and that the breach proximately caused the decedent's death. *White v. United States*, 959 F.3d 328, 332 (8th Cir. 2020) (citing *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000)). The duties for each cause of action are coextensive. *See Haynes*, 2023 WL 3736492, at *2.

5

### 1. Duty as to the Facility

"A duty to exercise care not only may be imposed by a controlling statute or ordinance or assumed by entering into a contractual relationship, but it may be imposed by common law under the circumstances of a given case." *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976). The Missouri Supreme Court and the Courts of Appeals have not specifically held whether a particular duty exists owed by a skilled nursing facility to its resident. However, the Missouri Supreme Court has discussed the parameters of determining the existence of a duty under common law:

> Under the principles of general negligence law, whether a duty exists in a given situation depends upon whether a risk was foreseeable. In the absence of a particular relationship recognized by law to create a duty, the concept of foreseeability is paramount in determining whether a duty exists. . . . Foreseeability for purposes of establishing whether a defendant's conduct created a duty to a plaintiff depends on whether the defendant should have foreseen a risk in a given set of circumstances. In this setting, foreseeability is forward-looking. . . .
>
> For purposes of determining whether a duty exists, this Court has defined foreseeability as the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it. The existence of a mere possibility is insufficient. The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it.

*Lopez*, 26 S.W.3d at 156 (internal quotation marks and citations omitted).

Plaintiff relies on *Guffey v. Integrated Health Services of Kansas City at Alpine North*, 1 S.W.3d 509, 515 (Mo. App. W.D. 1999), and *Poluski v. Richardson Transportation*, 877 S.W.2d 709, 713 (Mo. App. E.D. 1994). *Poluski* held that once a hospital accepted a patient, it owed the patient a specific duty of reasonable care proportionate to the patient's known needs as the patient's known condition required to safeguard and protect the patient from injury until the patient left the premises. 877 S.W.2d at 713-14. Though not addressing the element of duty specifically, *Guffey* considered a specific negligence claim based on a nursing home resident receiving multiple unexplained bruises. 1 S.W.3d at 512. The appellate court reversed the lower court's grant of summary judgment in favor of the nursing home. *Id.* at 519.

The Court finds that, although these cases do not specifically hold that a skilled nursing facility has a duty of care for its residents, they support the existence of such a duty. *Poulski* expressly held that a specific duty of reasonable care existed on the part of a healthcare facility from the time it accepts a patient to the time the patient leaves its premises and *Guffey* found the

6

plaintiff had raised a question of material fact as to a negligence claim against a nursing home. It is reasonable to conclude that Missouri courts would hold a skilled nursing facility, as a healthcare facility, has a specific duty of reasonable care to its resident from the time it accepts the resident to the time the resident leaves the premises. That duty is proportionate to the resident's needs as the resident's known conditions require to safeguard and protect the resident from injury. Defendants cite no authority to the contrary and do not discuss in any manner why or how a skilled nursing facility would not have such a duty when Missouri courts have held a hospital does.

Accordingly, the Court finds dismissal of Plaintiff's negligence claim against the Facility is not warranted based on Defendants' argument that the Facility owed no duty of care to Decedent.

### 2. Duty as to the Corporation

Defendant argues that corporate negligence "is not a recognized claim against a skilled nursing facility corporate entity in Missouri." As Defendants acknowledge, however, corporate negligence is a recognized cause of action in Missouri. Missouri has applied the corporate negligence cause of action in the context of hospitals, holding that a "hospital 'owes [its] patient a specific duty of reasonable care proportionate to the patient's needs as the patient's known condition requires[.]'" *LeBlanc v. Rsch. Belton Hosp.*, 278 S.W.3d 201, 206 (Mo. Ct. App. 2008) (quoting *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 922 (Mo. banc 1992), *abrogated on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603, 614 n. 13 (Mo. banc 2008)); *Poluski*, 877 S.W.2d at 713.

The Missouri Supreme Court explained with approval that the negligent credentialing claim[3] the Court of Appeals recognized in *LeBlanc* "is merely the application of principles of common law negligence to hospitals in a manner that comports with the true scope of their operations." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 653 (Mo. banc 2019) (internal quotation marks omitted). In *Tharp*, the Supreme Court indicated that a hospital has a duty to credential only competent and careful physicians when evaluating applications for staff privileges. 587 S.W.3d at 656. This is a duty that applies to a corporate function of a

---

[3] "To hold a hospital liable for negligent credentialing, the ultimate facts a jury must find are: (1) the hospital credentialed an incompetent or generally careless physician; (2) the hospital was thereby negligent; and (3) as a direct result of such negligence, the plaintiff suffered damage." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 658 n.7 (Mo. banc 2019).

healthcare business, as opposed to a primary healthcare delivery function, such as actually performing a surgery, for example.

The Court finds that, although *LeBlanc* and *Tharp* do not specifically hold that a corporation that owns and controls all finances and operations of a skilled nursing facility has a duty of care for its facility's residents, they support the existence of such a duty. Both cases recognize that the principles of common law negligence apply to healthcare businesses in a manner that comports with the scope of their operations, including administrative functions that affect the delivery of healthcare, such as credentialing of physicians who will be allowed to provide healthcare services at their facilities. It is reasonable to predict that Missouri courts would hold that a corporation that owns and completely controls the finances and operations of a skilled nursing facility, which is a healthcare facility, has a specific duty of reasonable care. The scope of that duty applies to the corporation's administrative functions that affect the delivery of healthcare at its facilities. Like the duty of the facilities themselves, the corporation's duty is owed to its facility's residents from the time the facility accepts each resident in accordance with its policies to the time the resident leaves the premises and is proportionate to the resident's needs as the resident's known conditions require to safeguard and protect the resident from injury.

Accordingly, the Court finds dismissal of Plaintiff's negligence claim against the Corporation is not warranted based on Defendants' argument that the Corporation owed no duty of care to Decedent.

**B. Plaintiff's Alter Ego Claim – Improper Purpose**

Defendants next argue that Plaintiff fails to state a claim for alter ego liability. Defendants contend Plaintiff fails to make specific factual allegations showing how the "corporate cloak" of the Corporation was used as a subterfuge to defeat public convenience, justify a wrong, or to perpetuate a fraud, as required to pierce the corporate veil based on alter ego status. Defendants argue that Plaintiff's allegation that one entity's complete control and domination over the other caused undercapitalization and understaffing at the Facility is conclusory and not sufficient to inform Defendants as to what is being alleged so they can defend against it. Plaintiff asserts that her amended complaint meets the pleading requirements for an alter ego claim under Missouri law, including "improper purpose."

"Under Missouri law, alter ego liability is a separate and distinct cause of action that allows a court to hold a business entity's owners personally liable for the entity's obligations." *Curators*

*of Univ. of Missouri v. Suppes*, 583 S.W.3d 49, 64 (Mo. Ct. App. 2019). According to the Missouri Supreme Court:

> generally a parent company is not responsible for the acts of its subsidiary corporation and . . . this Court has admonished that parent/subsidiary separation should be ignored with caution, and only when the circumstances clearly justify it. For this reason, . . . corporate forms will be ignored and the corporate veil pierced only if three factors are shown:
>
>> 1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>>
>> 2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>>
>> 3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. banc 2013) (internal quotation marks omitted).

The Court is unpersuaded by Defendants' argument that Plaintiff's allegation that the Corporation's complete control and domination over the Facility caused undercapitalization and understaffing at the Facility is conclusory and not sufficient to inform Defendants as to what is being alleged so they can defend against it. The Court finds the circumstances here are similar to those in which Missouri courts have pierced the corporate veil:

> In *Irwin v. Bertelsmeyer*, the Missouri Court of Appeals reversed the trial court's dismissal of an action seeking to pierce the corporate veil when the plaintiff alleged that the defendants were the corporation's sole shareholders, officers, and directors and used the corporation to avoid their judgment debt to the plaintiff. 730 S.W.2d 302, 304 (Mo. Ct. App. 1987). In [*Edward D. Gevers Heating & Air Conditioning Co. v.*] *R. Webbe Corp.*, the plaintiff pled that defendants were the corporations' sole officers, directors and shareholders, made all corporate decisions, controlled all corporate activities, and held allegedly corporate property in their individual names to avoid plaintiff collecting on judgments against them individually. 885 S.W.2d [771,] 774 [(Mo. Ct. App. 1994). This was also sufficient to withstand a motion to dismiss. *Id.* at 775.

*Dunne v. Res. Converting, LLC*, No. 4:16 CV 1351 DDN, 2017 WL 564485, at *8 (E.D. Mo. Feb. 13, 2017). Further, the Missouri Supreme Court has held that "conduct that may justify piercing

the corporate veil includes . . . undercapitalization." *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 41 (Mo. 1999).[4]

Here, Plaintiff has pleaded that (1) the Corporation exercises complete control and domination of the Facility's finances, policy, and business practices in respect to funding, staffing, and patient load and acuity levels such that the Facility as to these matters had at the time no separate mind, will or existence of its own; (2) this control was used by the Corporation to commit the wrongful acts of depleting all the Facility's assets, thereby making it unable to pay a judgment resulting from its care of residents including Decedent, and to perpetrate the violation of a positive legal duty of care to Decedent through understaffing; and (3) the control proximately caused Decedent's injury of suffering a UTI. (Doc. 7 at ¶¶ 103-106.)

At this juncture, the Court finds Plaintiff's allegations sufficient to survive Defendants' motion to dismiss Plaintiff's alter ego claim as having pleaded the requisite factors to pierce the corporate veil under Missouri law.

## Conclusion

Accordingly, the Court **DENIES** Defendants' motion to dismiss (Doc. 9).

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 1, 2024

---

[4] The Missouri Supreme Court explained:

> Inadequate capitalization is circumstantial evidence tending to show an improper purpose or reckless disregard for the rights of others. Inadequate capitalization means assets that are very small in comparison to known risks associated with the planned corporate enterprise. Generally, the adequacy of capitalization is measured at the time of incorporation. Adequacy of capitalization is a fact question that turns on the nature of the business of the particular corporation.

*66, Inc.*, 998 S.W.2d at 41 (internal citations and quotation marks omitted).